RYAN RAPP
PACHECO
SORENSEN PLC

Lesli M. Sorensen, SB # 025770
lsorensen@rrpklaw.com
3200 N. Central Avenue, Suite 2250
Phoenix, Arizona 85012
(602) 280-1000 Office
(602) 265-1495 Fax
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE STATE OF ARIZONA

| | |
|---|---|
| John N. Doe and Jane N. Doe, husband and wife; and Jane T. Doe, an individual, | Case No.: |
| Plaintiffs, | VERIFIED COMPLAINT |
| vs. | (15 U.S.C. § 6851; Negligence Per Se; Invasion of Privacy; Intentional Infliction of Emotional Distress; Negligent Supervision) |
| John R. Doe, an individual; Buckeye Valley Fire District, a government entity; Arizona Fire and Medical Authority, a government entity; and Fictitious Persons 1-10, | JURY TRIAL DEMANDED |
| Defendants. | *(Assigned to the Honorable_____ )* |

Plaintiffs JOHN N. DOE, JANE N. DOE, and JANE T. DOE (collectively "Plaintiffs"), by and through undersigned counsel, for their Verified Complaint[1] against Defendants JONH R. DOE, BUCKEYE VALLEY FIRE DISTRICT, ARIZONA FIRE AND MEDICAL AUTHORITY, FICTITIOUS PERSONS 1-10, and in support thereof state as follows:

---

[1] Plaintiffs have signed the verification as "John N. Doe," "Jane N. Doe, and "Jane T. Doe," respectively. A verification with their true names is available to the Court upon request.

**PARTIES, JURISDICTION AND VENUE**

1.     Plaintiff JOHN N. DOE ("John N. Doe") is an adult resident of Yavapai County, Arizona. John N. Doe is currently married to Jane N. Doe. As set forth in his separate motion filed concomitantly with this Complaint, John N. Doe requests anonymity.

2.     Plaintiff JANE N. DOE ("N. Doe") is an adult resident of Yavapai County, Arizona. N. Doe is currently married to John N. Doe. N. Doe was formerly married to Defendant, John R. Doe. As set forth in her separate motion filed concomitantly with this Complaint, N. Doe requests anonymity.

3.     Plaintiff JANE T. DOE ("T. Doe") is an adult resident of Yavapai County, Arizona. T. Doe was formerly married to John N. Doe. Jane T. Doe is now married to a nonparty, "A.A." As set forth in her separate motion filed concomitantly with this Complaint, T. Doe requests anonymity.

4.     Defendant JOHN R. DOE ("R. Doe") is an adult resident of Maricopa County, Arizona. As set forth in their separate motion filed concomitantly with this Complaint, Plaintiffs request anonymity for John R. Doe, as knowledge of John R. Doe's true name would permit a member of the public to immediately identify Plaintiffs' true identities, causing irreparable harm to them and the parties' minor children.

5.     Defendant BUCKEYE VALLEY FIRE DISTRICT ("BVFD") is a government entity located in Maricopa County, Arizona. BVFD's administrative office is located at 6213 S. Miller Road, Suite 112, Buckeye, Arizona.

///

///

6.     Defendant ARIZONA FIRE AND MEDICAL AUTHORITY ("AFMA") is a government entity located in Arizona. AFMA's administrative office is located at 18818 N. Spanish Garden Drive, Sun City West, Arizona 85375.

7.     Defendants FICTITIOUS PERSONS 1-10 are those individual persons, firms, corporations, or other entities who are responsible to the Plaintiffs for the damages they have sustained and whose identities are unknown but will be added by appropriate amendments when ascertained. Any mention herein of the Defendants incorporates by reference the Fictitious Person Defendants.

8.     A.A. is an adult resident of Yavapai County, Arizona. A.A. is currently married to T. Doe. A.A. is not a party to this action; therefore, Plaintiffs endeavor to protect his identity as much as is feasibly possible.

9.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 since this Complaint is based upon a federal statute giving rise to a private cause of action.

10.    This Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

11.    This Court has personal jurisdiction over the Defendants as they all reside in or are in Arizona.

12.    This venue is appropriate pursuant to 28 U.S.C. § 1391.

**FACTUAL ALLEGATIONS**

**The Parties' Relationship**

13.    John N. Doe and T. Doe married each other in 2005.

14.    R. Doe and N. Doe married each other in 2006.

15.    In 2017, both John N. Doe and T. Doe (as a couple) and N. Doe and R. Doe (as a couple) decided to open their relationships.

16.    Both couples joined an online website where they could meet other couples to engage in intimate activities.

17.    The online website allows couples to create "profiles" explaining *inter alia* their relationship status and what they are "looking for" with other couples.

18.    In late 2017, John N. Doe and T. Doe came across N. Doe and R. Doe's profile on the website.

19.    John N. Doe and T. Doe met N. Doe and R. Doe via the website.

20.    John N. Doe, T. Doe, N. Doe, and R. Doe discussed engaging in intimate activities with one another.

21.    Both couples shared their privacy concerns about engaging in intimate acts with each other because both couples have minor children, John N. Doe is a police officer and R. Doe is a firefighter, and both couples lived in small communities.

22.    Both couples were concerned that the public disclosure of their personal lives would have negative effects on their children and jobs.

23.    All parties explicitly and verbally agreed (the "Agreement") that if they were to proceed with a relationship, all information—including audiovisual recordings—pertaining to their lifestyle could not to be shared with third parties.

///

///

4

**The Couples Create Audiovisual Recordings**

24. From late 2017 through early 2018, the couples engaged—independently or together—in various intimate acts.

25. For example, on at least one occasion John N. Doe and T. Doe went to N. Doe and R. Doe's house to have sex.

26. On other occasions, John N. Doe and T. Doe would engage in sexual conduct in their own home.

27. John N. Doe and T. Doe filmed the sexual conduct and shared the audiovisual recordings with N. Doe and R. Doe.

28. In total, at least ten audiovisual recordings were made from late 2017 through early 2018 by the two couples and disclosed to each other pursuant to the Agreement.

29. All audiovisual recordings were made consensually.

30. R. Doe filmed two of these audiovisual recordings (the "R. Doe Recordings").

31. The R. Doe Recordings contained intimate visual depictions of John N. Doe, T. Doe, and N. Doe engaging in intimate acts, including:

    a. John N. Doe, N. Doe, and T. Doe's faces;

    b. John N. Doe, N. Doe, and T. Doe's entire naked bodies, including their genitals, pubic areas, and nipples;

    c. John N. Doe's distinctive tattoos;

    d. John N. Doe, N. Doe, and T. Doe engaged in oral and vaginal sex;

    e. John N. Doe's bodily sexual fluids; and/or

    f. John N. Doe, N. Doe, and T. Doe engaged in other sexual acts.

5

32.     John N. Doe filmed the remaining eight recordings (the "JD Recordings").

33.     The JD Recordings contained intimate visual depictions of John N. Doe and T. Doe engaging in intimate acts, including:

        a.     John N. Doe and T. Doe's faces;

        b.     John N. Doe and T. Doe's entire naked bodies, including their genitals;

        c.     John N. Doe's distinctive tattoos;

        d.     John N. Doe and T. Doe engaging in oral and vaginal sex;

        e.     John N. Doe's bodily sexual fluids; and/or

        f.     John N. Doe and T. Doe engaged in other sexual acts.

34.     All ten audiovisual recordings are sexually explicit.

35.     N. Doe, T. Doe, and John N. Doe are identifiable in the R. Doe Recordings.

36.     T. Doe and John N. Doe are identifiable in the JD Recordings.

37.     R. Doe is <u>not</u> identifiable in the R. Doe Recordings.

38.     <u>Neither</u> the R. Doe Recordings nor the JD Recordings contain R. Doe's intimate visual depictions.

39.     In addition to the R. Doe Recordings and the JD Recordings, R. Doe created two additional audiovisual recordings of R. Doe and N. Doe engaged in intimate acts <u>and</u> R. Doe and T. Doe engaged in intimate acts (the "Unpublished Recordings").

40.     R. Doe shared the Unpublished Recordings with Plaintiffs.

41.     The Unpublished Recordings contained R. Doe's intimate visual depictions, including R. Doe's face, R. Doe in the nude, R. Doe having sex, R. Doe's genitals, and/or R. Doe's sexual bodily fluids.



42.     John N. Doe, T. Doe, N. Doe, and R. Doe shared all the audiovisual recordings (R. Doe Recordings, JD Recordings, and Unpublished Recordings) with each other subject to the Agreement that the videos would not be shared with any third parties.

43.     John N. Doe **never** shared any of the audiovisual recordings with any third parties.

44.     T. Doe **never** shared any of the audiovisual recordings with any third parties.

45.     N. Doe **never** shared any of the audiovisual recordings with any third parties.

### The Parties' Relationship Comes to an End

46.     In early 2018, John N. Doe and T. Doe decided to remain monogamous.

47.     John N. Doe and T. Doe subsequently decided to break off their intimate relationship with N. Doe and R. Doe.

48.     This meant that John N. Doe, T. Doe, N. Doe, and R. Doe ceased creating and sharing audiovisual recordings with one another.

49.     Despite this, the parties attempted to maintain an amicable relationship with one another.

50.     Ultimately, N. Doe and R. Doe also decided to remain monogamous.

### The Couples Divorce and Remarry

51.     In 2019, N. Doe and R. Doe officially divorced.

52.     N. Doe and R. Doe share joint custody of their minor children.

53.     The minor children live with both N. Doe and R. Doe pursuant to a parenting time agreement.

54.     N. Doe and R. Doe's divorce was contentious and bitter.

7

55.    In 2020, John N. Doe and T. Doe officially divorced.

56.    T. Doe and John N. Doe share joint custody of their minor children.

57.    The minor children live with both T. Doe and John N. Doe pursuant to a parenting time agreement.

58.    In 2021, T. Doe married non-party A.A.

59.    In 2023, John N. Doe married N. Doe.

**R. Doe Publicly Discloses the Audiovisual Recordings**

60.    Motherless.com is a pornographic website.

61.    According to the Ninth Circuit decision in *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 600-601 (9th Cir. 2018), Motherless.com:

> contains over 12.6 million mostly pornographic pictures and video clips. The content generally has been uploaded by the site's users, and the uploaders may or may not have created the material . . . In 2010, the website had nearly 750,000 active users and about 610,000 visits daily.

62.    Motherless.com bills itself as a "moral free file host."

63.    Upon information and belief, and according to Motherless.com's Terms of Use, Motherless.com is now owned by Kick Online Entertainment S.A.

64.    Motherless.com currently directs users to contact its offices in San Jose, Costa Rica concerning any disputes.

65.    Upon information and belief, Motherless.com is currently operated from offices in Costa Rica.

66.    Upon information and belief, R. Doe published several of the JD Recordings and the R. Doe Recordings to Motherless.com on July 23, 2022.



8

67.     Several of the JD Recordings and R. Doe Recordings were published to Motherless.com on July 23, 2022.

68.     Upon information and belief, R. Doe made several of the JD Recordings and R. Doe Recordings accessible to the public from July 23, 2022, until April 27, 2023.

69.     Several of the JD Recordings and R. Doe Recordings were made accessible to the public from July 23, 2022, until April 27, 2023.

70.     Upon information and belief, R. Doe titled the videos with personally identifiable information pertaining to John N. Doe.

71.     The titles of each of the published JD Recordings and R. Doe Recordings was: "f**k the cops! [city of residence] az police officer + wife."

72.     John N. Doe is a police officer who lives in a small community in Yavapai County, Arizona.

73.     Upon information and belief, R. Doe published the remaining JD Recordings to Motherless.com on August 10, 2022.

74.     The remaining JD Recordings were published to Motherless.com on August 10, 2022.

75.     Upon information and belief, R. Doe made the remaining JD Recordings accessible to the public from August 10, 2022, until April 27, 2023.

76.     The remaining JD Recordings were made accessible to the public from August 10, 2022, until April 27, 2023.

77.     The title of each of the remaining JD Recordings was: "F**k the cops! [city of residence] az police officer n wife."

9

78.     In total, ten audiovisual recordings (8 JD Recordings and 2 R. Doe Recordings) containing visual intimate depictions of N. Doe, T. Doe, and John N. Doe—but not R. Doe—were published to, and made publicly accessible on, Motherless.com.

79.     Notably, the Unpublished Recordings containing R. Doe's intimate visual depictions were not uploaded to Motherless.com.

80.     Upon information and belief, R. Doe engaged in this conduct out of spite and anger towards John N. Doe and N. Doe for multiple reasons, including:

a.      R. Doe engaged in abusive conduct towards N. Doe during their marriage;

b.      John N. Doe and N. Doe continued seeing each other following the cessation of their intimate interactions as couples;

c.      N. Doe and R. Doe subsequently divorced;

d.      T. Doe, N. Doe, and John N. Doe have maintained an amicable co-parenting relationship with one another in the best interests of their respective minor children;

e.      N. Doe and John N. Doe do not have an amicable co-parenting relationship with R. Doe;

f.      In June 2022, the Family Court permitted N. Doe to move her two minor children to Yavapai County to live with John N. Doe over R. Doe's staunch objections;

g.      The Family Court also altered R. Doe's parenting time due to R. Doe's conduct and rejected R. Doe's proposed parenting plan that would have largely removed N. Doe from their minor children's lives;

h.      The Family Court closed the matter June 14, 2022; and

i.      In June 2022, following the Family Court's decision permitting N. Doe to move her two minor children with R. Doe to Yavapai County, John N. Doe publicly proposed to N. Doe.

81.     By contrast, none of the Plaintiffs had any reason to publish the ten audiovisual recordings.

82.     Plaintiffs maintain an amicable co-parenting relationship for the benefit of their respective minor children.

83.     For example, if John N. Doe and N. Doe are working, T. Doe and A.A. will pick up N. Doe's children from school.

84.     The same is true if T. Doe and A.A. are working—N. Doe and John N. Doe will pick up T. Doe's and John N. Doe's children from school even when it is not John N. Doe's parenting time.

85.     T. Doe, N. Doe, John N. Doe, and A.A. will also occasionally have family dinners together.

86.     At other times, T. Doe, N. Doe, John N. Doe, and A.A. will invite each other to various events they are hosting, such as Super Bowl watch parties.

87.     All of the minor children have a good relationship with each other.

88.     The minor children often view each other as siblings.

89.    Overall, N. Doe, T. Doe, John N. Doe, and A.A. have a good relationship with one another.

90.    N. Doe, T. Doe, John N. Doe, and A.A. each believe that maintaining a good relationship with one another as adults is in the best interests of all of the minor children.

91.    Plaintiffs continue to live in the same small community.

92.    John N. Doe continues to work as a police officer.

93.    None of the Plaintiffs possessed either the JD Recordings or the R. Doe Recordings at the time they were published (*i.e.,* 2022) to Motherless.com.

**Plaintiffs Learn About R. Doe's Actions**

94.    On February 7, 2023, T. Doe received a text message from a non-party colleague, X.X.[2]

95.    X.X. is a firefighter in Phoenix, Arizona.

96.    X.X. asked T. Doe to call him:

iMessage
Tue, Feb 7 at 4:02 PM

Hey!!! Give me a call when you get a second. Got a question

Hey! lol okay. Everything okay?

Oh yeah for sure

97.    During their phone call, X.X. informed T. Doe that sexually explicit videos of Plaintiffs had been uploaded to Motherless.com.

98.    According to X.X., the videos were discovered by a third party, nonparty Y.Y.[3]

_____

[2] X.X. is not a party to this action; therefore, Plaintiffs endeavor to protect his identity as much as is feasibly possible.

12

99.   Y.Y. is a firefighter in Sedona, Arizona.

100.   X.X. informed T. Doe that Y.Y. immediately recognized John N. Doe, T. Doe, and N. Doe from watching one of the audiovisual recordings.

101.   X.X. informed T. Doe that Y.Y. contacted X.X. with the intent that X.X. would notify T. Doe and John N. Doe about the audiovisual recordings.

102.   Upon hearing this, T. Doe had nausea, extreme dizziness, sweating, rapid heartbeat, and transient vision changes.

103.   T. Doe subsequently sat on the floor and crawled to the toilet convinced she would vomit.

104.   X.X. subsequently texted T. Doe a link to the videos on the Motherless.com website.

105.   T. Doe clicked the texted link and immediately saw that ten audiovisual recordings had been posted to Motherless.com from a user account titled "dustylongrod."

106.   Motherless.com provides "thumbnails" for videos published on its website.

107.   A "thumbnail" is "a still image that acts as a snapshot and a preview image for your video and represents its main idea. This image is smaller than a full digital image . . . ."[4]

108.   Without even *watching* a single video, T. Doe was able to immediately recognize herself and John N. Doe in the thumbnails Motherless.com displayed.

109.   To wit, both John N. Doe's and T. Doe's faces appear in several thumbnails.

---

[3] Y.Y. is not a party to this action; therefore, Plaintiffs endeavor to protect his identity as much as is feasibly possible.

[4] EXPLAIN NINJA, VIDEO THUMBNAIL: WHAT IT IS AND WHY DOES IT MATTER? (2021) https://explain.ninja/blog/video-thumbnail-what-is-it-and-why-does-it-matter/.



110.    After watching approximately five seconds of just one of the audiovisual recordings, T. Doe continued feeling ill and wanted to vomit.

111.    T. Doe was shaking, became dizzy, and began panicking.

112.    T. Doe was especially scared because her husband, A.A., did not know about T. Doe's intimate activities with N. Doe and R. Doe from years before.

113.    For T. Doe, this was all in her past and she dreaded having to tell A.A. what had happened.

114.    As T. Doe was processing what had happened, she attempted to contact John N. Doe to inform him as well.

115.    At first, T. Doe was not able to get in touch with John N. Doe.

116.    Eventually, John N. Doe returned T. Doe's calls.

117.    T. Doe told John N. Doe about the audiovisual recordings on Motherless.com.

118.    T. Doe explained to John N. Doe what X.X. had told T. Doe.

119.    T. Doe also shared the link to the audiovisual recordings on Motherless.com to John N. Doe.

120.    John N. Doe clicked on the link and accessed Motherless.com.

121.    Each of the audiovisual recordings on Motherless.com contains metadata concerning the audiovisual recordings.

122.    John N. Doe noted that Motherless.com identified several audiovisual recordings as having been uploaded on July 23, 2022.

123.    For example, one of the R. Doe Recordings published to Motherless.com on July 23, 2022, publicly disclosed the following metadata:

14

426 Views • 5 Favorites • 23 Jul 2022

124.    John N. Doe also noted that the remaining audiovisual recordings provided an upload date of August 10, 2022.

125.    For example, one of the John N. Doe Recordings published to Motherless.com on August 10, 2022, publicly disclosed the following metadata:

966 Views • 11 Favorites • 10 Aug 2022

126.    Further, *each* of the audiovisual recordings had been viewed at least 100 times.

127.    As of February 7, 2023, the ten audiovisual recordings had view counts ranging from 105 to 966 each.

128.    In addition, the metadata shows that many of the audiovisual recordings had been "Favorite[d]" by a viewer.

129.    Motherless.com also permits viewers to "Share," "Shout," and "Download" the audiovisual recordings, as well as "Add" the audiovisual recordings to a user's account:



130.    After verifying what T. Doe had told him, John N. Doe called X.X. directly.

131.    X.X. repeated to John N. Doe the same information X.X. had told T. Doe.

132.    After speaking to X.X., John N. Doe drove to N. Doe's place of business.

133.    John N. Doe asked to speak to N. Doe privately, and John N. Doe subsequently informed N. Doe about the audiovisual recordings on Motherless.com.

15

**Police Department Investigates**

134.    On February 7, 2023, John N. Doe and N. Doe filed a complaint with the police.

135.    T. Doe participated in the police investigation.

136.    The police assigned a detective (the "Detective") to Plaintiffs' case.

137.    On the morning of April 27, 2023, T. Doe visited Motherless.com and determined the ten audiovisual recordings were still publicly accessible.

138.    Upon information and belief, the Detective spoke to R. Doe later that same day.

139.    Upon information and belief, the Detective informed R. Doe that she wished to speak to him about a "sex offense."

140.    Upon information and belief, R. Doe refused to speak to the Detective.

141.    After attempting to speak to R. Doe, the Detective called T. Doe.

142.    During the call, the Detective informed T. Doe of her attempt to speak to R. Doe earlier that day.

143.    While on the phone, the Detective visited Motherless.com.

144.    The Detective informed T. Doe that the audiovisual recordings were no longer publicly accessible.

145.    The Detective also informed T. Doe that the user's account, Dustylongrod, had also been deleted.

146.    T. Doe visited Motherless.com and confirmed the videos had been removed and the user's account had been deleted.

147.   The Detective and T. Doe noted that the videos and the Dustylongrod user account were removed the same day the Detective attempted to speak to R. Doe.

**Plaintiffs File Notice of Claim and R. Doe Retaliates**

148.   R. Doe was on duty with BVFD on July 23, 2022, and August 10, 2022—the days on which the ten audiovisual recordings were uploaded to Motherless.com

149.   BVFD is a member of AFMA.

150.   Plaintiffs served BVFD and AFMA with a Notice of Claim on August 6, 2023.

151.   The Notice of Claim provided AFMA and BVFD with the material factual allegations contained herein.

152.   AFMA chose an independent investigator to investigate Plaintiffs' allegations against R. Doe.

153.   AFMA's goal was to determine whether R. Doe violated AFMA or BVFD policies.

154.   During AFMA's and BVFD's investigation, R. Doe unilaterally changed his parenting time schedule by changing the days on which he would have custody of his minor children.

155.   R. Doe's altered schedule did not match the schedule R. Doe had used for multiple years, did not match the administrative leave schedule imposed by BVFD/AFMA, and R. Doe did not provide any proof to support the altered schedule he provided.

156.   Notably, however, the altered schedule would reduce N. Doe's parenting time.

157.   N. Doe informed R. Doe that she did not feel comfortable forfeiting her parenting time to R. Doe without notice, explanation, or proof of R. Doe's change in work

schedule.

158.   N. Doe informed R. Doe that she intended to continue following the same schedule both parties had used for multiple years absent additional information to support R. Doe's altered schedule.

159.   R. Doe dismissed N. Doe's concerns and requests for additional information.

160.   Instead, on the first *new* date that R. Doe claimed to have parenting time, R. Doe contacted N. Doe and informed her that she needed to drop their minor children off to him immediately.

161.   N. Doe reiterated to R. Doe that she possessed his parenting schedule for the entire year and that it was not his day to have their minor children.

162.   R. Doe then called the police.

163.   The police contacted N. Doe and, relying on the altered schedule R. Doe provided them, informed N. Doe that she needed to drop off her minor children with R. Doe or face arrest.

164.   N. Doe explained that R. Doe unilaterally changed the parenting time schedule and that she possessed the original schedule—the same schedule she and R. Doe had been using all year—that demonstrated that N. Doe was supposed to have custody of the children that day.

165.   The police informed N. Doe that N. Doe would need to go to Family Court to resolve the dispute, but that she would need to drop off her minor children with R. Doe or face arrest.

166.   N. Doe immediately packed her minor children's bags and took her minor children to the agreed-to drop off point with R. Doe.

167.   Upon information and belief, R. Doe unilaterally changed his parenting time schedule and called the police to retaliate against N. Doe for filing the Notice of Claim with AFMA and BVFD.

168.   Upon information and belief, R. Doe has demonstrated a pattern and practice of retaliating against N. Doe and Plaintiffs whenever he becomes angry with N. Doe or Plaintiffs that continues to this day.

**T. Doe Has Suffered Severe Emotional Distress**

169.   T. Doe has suffered severe emotional distress as a direct result of the public disclosure of the R. Doe Recordings and JD Recordings, including without limitation:

a.   Nausea;

b.   Dizziness;

c.   Sweating;

d.   Rapid heartbeat;

e.   Transient vision changes;

f.   Feelings of extreme shame and guilt;

g.   Crippling fear, including fear that her minor children will learn of the audiovisual recordings and her former private life, fear for her and her family's safety, and fear that R. Doe will re-upload the audiovisual recordings or other recordings or pictures he may still possess;

h.   Anxiety;

     i.     Declined work productivity;

     j.     Loss of 20 pounds of weight;

     k.     Teeth grinding and jaw clenching; and

     l.     Lack of sleep and exhaustion.

170.    T. Doe has since been prescribed and regularly takes medication to help with her anxiety symptoms.

171.    T. Doe also receives injections into her Masseter muscles to help decrease teeth grinding and jaw clenching.



172.    T. Doe has also installed security cameras both inside and outside her home to feel protected.

173.    T. Doe was diagnosed with depression prior to learning of the audiovisual recordings' publication on Motherless.com.

174.    In the past, T. Doe has experienced depressive episodes, including loss of joy in hobbies and recreational activities.

175.    T. Doe was prescribed two anti-depressants to manage her symptoms.

176.    These medications successfully managed her symptoms until February 7, 2023.

177.    Since learning of the audiovisual recordings' publication on Motherless.com, T. Doe's depression has become severely worse.

178.    T. Doe has experienced more depressive episodes, including a loss of enjoyment in her hobbies.

179.    T. Doe believes the sudden increase in severity and regularity of these depressive symptoms is the direct result of R. Doe's conduct in publishing the ten

1  audiovisual recordings to Motherless.com.

2  **N. Doe Has Suffered Severe Emotional Distress**

3  180.   N. Doe has suffered severe emotional distress as a direct result of the public

4  disclosure of the R. Doe Recordings, including without limitation:

5  a.   Anxiety;

6  b.   Stress;

7  c.   Fear that her minor children will learn of the audiovisual recordings and

8  about her past private life;

9  d.   Fear that members of her small community will learn of the audiovisual

10  recordings and about her past private life;

11  e.   Fear that R. Doe will re-upload the audiovisual recordings online or

12  other recordings or pictures he may still possess;

13  f.   Fear for her and her family's safety;

14  g.   Difficulty sleeping;

15  h.   Night terrors;

16  i.   Stress-related pins and needles and muscle spasms while trying to sleep;

17  j.   Exhaustion;

18  k.   Jaw clenching;

19  l.   Hair thinning and hair loss;

20  m.   Weight gain; and

21  n.   Shaking.

22  181.   N. Doe has sought the help of a professional trauma therapist.

21

182.   N. Doe has been prescribed antidepressants and anxiety medication to control her symptoms.

183.   N. Doe has also installed security cameras at her home and in her car, which she uses to drop off her minor children when it is R. Doe's scheduled parenting time.

**John N. Doe Has Suffered Severe Emotional Distress**

184.   John N. Doe has suffered severe emotional distress as a direct result of the public disclosure of the R. Doe Recordings and JD Recordings, including without limitation:

a.   Panic attacks due to concerns over how the public disclosure of the audiovisual recordings impacts his life and his relationships with N. Doe, T. Doe, and his minor children;

b.   Fear that his minor children will learn of the audiovisual recordings and about his past private life and the ridicule and embarrassment his minor children might face as a consequence;

c.   Fear that the audiovisual recordings will be republished to the Internet by R. Doe or others who might have copied them while they were available online on Motherless.com;

d.   Fear that R. Doe may publish other recordings or pictures he may still possess;

e.   Loss of hair;

f.   Depression;

g.   Decline in work productivity;

h.   Loss of interest in hobbies;

i.      Shortness of breath and chest pains;

j.      Weight gain of 20 pounds;

k.      Feelings of shame, guilt, and humiliation;

l.      Obsessive and uncontrollable thoughts regarding the public disclosure of the audiovisual recordings; and

m.      Paranoia over being recognized by work colleagues or members of the public recognizing him from the audiovisual recordings.

185.   John N. Doe began seeing a crisis therapist.

186.   John N. Doe served four tours of duty in Iraq, after which he was diagnosed with major depressive disorder with recurrent episodes.

187.   John N. Doe's symptoms were well controlled with medications for mood stability and attention deficit hyperactivity disorder ("ADHD").

188.   Since being diagnosed and receiving proper medical treatment, John N. Doe's symptoms had been under control.

189.   Following the discovery of the ten audiovisual recordings on Motherless.com, John N. Doe' symptoms have re-emerged, including:

a.      Teeth grinding, causing enamel loss and shape change;

b.      Anxiety; and

c.      Bouts of anger.

190.   John N. Doe believes the re-emergence of these symptoms is the direct result of R. Doe's conduct in publishing the ten audiovisual recordings to Motherless.com.

**R. Doe is Responsible for the Publication of the Audiovisual Recordings**

191.   Upon information and belief, R. Doe is responsible for the publication of the JD Recordings and the R. Doe Recordings to Motherless.com.

192.   The R. Doe Recordings and JD Recordings were published and made accessible on Motherless.com approximately six weeks after the Family Court granted N. Doe's request to relocate her minor children to Yavapai County.

193.   The R. Doe Recordings and JD Recordings were also published approximately four weeks after John N. Doe and N. Doe publicly announced their engagement.

194.   The Unpublished Recordings, which were the only audiovisual recordings containing R. Doe's intimate visual depictions, were not published to Motherless.com.

195.   Plaintiffs all have an amicable relationship with one another.

196.   Plaintiffs would never take any actions against each other that would jeopardize that amicable relationship.

197.   Plaintiffs prioritize their children's well-being.

198.   Plaintiffs believe that by having an amicable relationship with one another, they can provide stable, loving homes for their children.

199.   X.X. and Y.Y., the two individuals who discovered the R. Doe Recordings and JD Recordings on Motherless.com, are both firefighters.

200.   The Plaintiffs have never disclosed the R. Doe Recordings or the JD Recordings to any third parties.

201.   The Plaintiffs did not possess the R. Doe Recordings or any of the JD Recordings in 2022.

202.   R. Doe is the only person who could possess the R. Doe Recordings and JD Recordings.

203.   The titles of the videos specifically identified John N. Doe as a police officer in the small town in which he resides.

204.   John N. Doe is a police officer who lives in the small community identified in the title of the videos but does not work for that town's Police Department.

205.   Further, the "wife" in the videos is T. Doe, not N. Doe.

206.   Only someone who knew John N. Doe was a police officer *and* lived in the identified small town would know to describe John N. Doe in this way.

207.   Further, only someone who knew John N. Doe and T. Doe *were* married would know to describe T. Doe as John N. Doe's "wife."

208.   R. Doe knows John N. Doe is a police officer.

209.   R. Doe knows that John N. Doe lives in the small town identified in the title of the videos on Motherless.com.

210.   R. Doe knows that T. Doe was married to John N. Doe.

211.   Further, the R. Doe Recordings and the JD Recordings were still accessible on Motherless.com on the morning of April 27, 2023.

212.   That same day, the Detective attempted to speak to R. Doe about a "sex offense."

213.   That same day (*i.e.*, April 27, 2023), the audiovisual recordings were removed from Motherless.com.

**BVFD and AFMA Failed to Supervise and Reasonably Control R. Doe**

214.    R. Doe was on duty on July 23, 2022, when several of the JD Recordings and the R. Doe Recordings were published and made accessible on Motherless.com.

215.    R. Doe was on duty on August 10, 2022, when the remaining JD Recordings were published and made accessible on Motherless.com.

216.    Upon information and belief, because R. Doe was on duty, R. Doe would have published the R. Doe Recordings and JD Recordings while on AFMA or BVFD's premises or using AFMA or BVFD chattels, such as BVFD vehicles, fire trucks, computers, or Internet.

217.    Upon information and belief, BVFD and AFMA have policies against employees accessing pornographic websites while on duty.

218.    Upon information and belief, BVFD and AFMA do not provide employees training on its policies prohibiting employees from accessing pornographic websites while on duty.

219.    Upon information and belief, BVFD and AFMA have Internet WiFi that employees can access.

220.    Upon information and belief, BVFD and AFMA have computers that employees can access.

221.    Upon information and belief, BVFD and AFMA do not "block" WiFi users from accessing pornographic websites, like Motherless.com.

222.    Upon information and belief, BVFD and AFMA do not have any mechanisms in place to monitor employees' Internet use while on duty.

26

223.   Upon information and belief, R. Doe used AFMA or BVFD's WiFi to upload the audiovisual recordings to Motherless.com.

224.   Upon information and belief, R. Doe used AFMA or BVFD computers or equipment to upload the audiovisual recordings to Motherless.com.

225.   X.X. and Y.Y., the two individuals who reported the audiovisual recordings' existence on Motherless.com to T. Doe and John N. Doe, are both firefighters in Arizona.

226.   Upon information and belief, R. Doe informed other individuals in his profession or department of the audiovisual recordings' existence.

227.   Upon information and belief, BVFD and AFMA knew or should have known about R. Doe's conduct while on duty, including his use of BVFD and AFMA time and resources, to undertake his conduct.

228.   Upon information and belief, AFMA and BVFD knew that R. Doe has a propensity for engaging in such conduct, including without limitation distributing third party's intimate visual depictions to other firefighters without the third party's consent, and visiting pornographic websites while on duty.

## FEDERAL CLAIMS

### COUNTS 1-11
### DISCLOSURE OF INTIMATE VISUAL DEPICTIONS
(John N. Doe and T. Doe against R. Doe)

229.   Plaintiffs, by this reference, incorporate the contents and allegations of the preceding paragraphs of this complaint as if fully set forth here.

230.   President Biden signed into law the Violence Against Women Reauthorization Act of 2022 (the "Act") on March 15, 2022.

231.   The Act went into effect on October 1, 2022.

232.   Section 1309 of the Act is codified as 15 U.S.C. § 6851.

233.   15 U.S.C. § 6851(b)(1)(A) affords a private right of action to any:

individual whose intimate visual depiction is disclosed, in or affecting
interstate or foreign commerce or using any means or facility of interstate or
foreign commerce, without the consent of the individual, where such disclosure
was made by a person who knows that, or recklessly disregards whether, the
individual has not consented to such disclosure . . . .

(Emphasis added).

234.   An "intimate visual depiction" includes "data stored . . . by electronic means
which is capable of conversion into a visual image, and data which is capable of conversion
into a visual image that has been transmitted by any means" that depicts the individual's
"uncovered genitals, pubic area, anus, or post-pubescent female nipple" or "the display or
transfer of bodily sexual fluids" by or between an "identifiable individual." 15 U.S.C. §
6851(a)(5); 18 U.S.C. § 2256(5).

235.   A "depicted individual" means "an individual whose body appears in whole or
in part in an intimate visual depiction and who is identifiable by virtue of the person's face,
likeness, or other distinguishing characteristic, such as a unique birthmark or other
recognizable feature, or from information displayed in connection with the visual depiction."
15 U.S.C. § 6851(a)(3).

236.   To "disclose" means "to transfer, publish, distribute, or make accessible." 15
U.S.C. § 6851(a)(4).

237.   Upon information and belief, on July 23, 2022 and August 10, 2022, R. Doe
published a total of ten different audiovisual recordings (the JD Recordings and R. Doe

Recordings) depicting John N. Doe and T. Doe's intimate visual depictions, including without limitation John N. Doe's and T. Doe's genitals (*e.g.*, John N. Doe's penis and T. Doe's vagina), John N. Doe's and T. Doe's pubic areas, T. Doe's nipples, and the transfer of John N. Doe's seminal fluid on to T. Doe.

238.   In addition, upon information and belief, R. Doe published one photograph (the "T. Doe Photograph") depicting T. Doe's intimate visual depictions, including without limitation T. Doe's face and T. Doe engaged in oral sex on a male.

239.   John N. Doe and T. Doe are readily identifiable in each of the ten different audiovisual recordings, including for example because their faces are depicted, John N. Doe's tattoos are visible, and the videos were given personally identifiable titles of "f**k the cops! [city of residence] az police officer + wife" (referring to John N. Doe's occupation, city of residence, and relationship with T. Doe). In fact, two separate third parties immediately recognized John N. Doe and T. Doe as depicted in the audiovisual recordings.

240.   T. Doe is readily identifiable in the T. Doe Photograph because her face is depicted.

241.   Upon information and belief, R. Doe made the R. Doe Recordings and JD Recordings publicly accessible from July 23, 2022, and August 10, 2022 (respectively), until April 27, 2023.

242.   Upon information and belief, R. Doe made the T. Doe Photograph publicly accessible until April 27, 2023.

243.   The T. Doe Photograph was publicly accessible until April 27, 2023.

244.   Each of the ten different audiovisual recordings had been viewed at least 100 times by February 7, 2023 (the date upon which Plaintiffs first saw the videos on Motherless.com).

245.   Upon information and belief, the T. Doe Photograph had been viewed at least 100 times by February 13, 2023.

246.   John N. Doe and T. Doe did not provide R. Doe affirmative, conscious, and voluntary consent to disclose, publish, or make the ten different audiovisual recordings or the T. Doe Photograph accessible on Motherless.com—to the contrary, John N. Doe, T. Doe, and R. Doe had expressly agreed that the ten different audiovisual recordings should never be disclosed to persons other than Plaintiffs and R. Doe. Thus, R. Doe had actual knowledge he did not have John N. Doe's and T. Doe's consent.

247.   The ten different audiovisual recordings and T. Doe Photograph were not commercial pornographic content.

248.   R. Doe's disclosures were not made in good faith to law enforcement; or as part of legal proceedings; or as part of medical education, diagnosis, or treatment; or in the reporting or investigation of unlawful content or unsolicited or unwelcome content.

249.   John N. Doe's and T. Doe's intimate visual depictions were not a matter of public concern or public interest. Lastly, the intimate visual depictions were not reasonably intended to assist John N. Doe and T. Doe.

250.   John N. Doe seeks liquidated damages in the amount of $1,650,000 ($150,000 for each of the ten audiovisual recordings containing John N. Doe's intimate visual

depiction), plus attorney's fees, plus the costs of this action, plus other litigation costs reasonably incurred pursuant to 15 U.S.C. § 6851(b)(3)(A)(i).

251. T. Doe seeks liquidated damages in the amount of $1,800,000 ($150,000 for each of the ten audiovisual recordings and one T. Doe Photograph containing T. Doe's intimate visual depiction), plus attorney's fees, plus the costs of this action, plus other litigation costs reasonably incurred pursuant to 15 U.S.C. § 6851(b)(3)(A)(i).

## COUNT 12
## DISCLOSURE OF INTIMATE VISUAL DEPICTIONS
(N. Doe Against R. Doe)

252. Plaintiffs, by this reference, incorporate the contents and allegations of the preceding paragraphs of this complaint as if fully set forth here.

253. Upon information and belief, on July 23, 2022, R. Doe published the R. Doe Recordings, one of which depicted N. Doe's intimate visual depiction, including without limitation N. Doe's genitals, N. Doe's pubic area, and N. Doe's nipples.

254. N. Doe is readily identifiable in the R. Doe Recording, including for example because her face is depicted. In fact, two separate third parties immediately recognized N. Doe as depicted in the audiovisual recordings.

255. Upon information and belief, R. Doe made the R. Doe Recordings publicly accessible from July 23, 2022, until April 27, 2023.

256. The R. Doe Recording that depicts N. Doe had been viewed at least 100 times by February 7, 2023 (the date upon which Plaintiffs first saw the videos on Motherless.com).

257. N. Doe did not provide R. Doe affirmative, conscious, and voluntary consent to disclose, publish, or make the R. Doe Recording depicting N. Doe accessible on

Motherless.com—to the contrary, N. Doe and R. Doe had expressly agreed that the R. Doe Recording depicting N. Doe should never be disclosed to persons other than Plaintiffs and R. Doe. Thus, R. Doe had actual knowledge he did not have N. Doe's consent.

258.    The R. Doe Recording depicting N. Doe was not commercial pornographic content.

259.    R. Doe's disclosures were not made in good faith to law enforcement; or as part of a legal proceedings; or as part of medical education, diagnosis, or treatment; or in the reporting or investigation of unlawful content or unsolicited or unwelcome content.

260.    N. Doe's intimate visual depictions were not a matter of public concern or public interest.

261.    The intimate visual depictions were not reasonably intended to assist N. Doe.

262.    N. Doe seeks liquidated damages in the amount of $150,000, plus attorney's fees, plus the costs of this action, plus other litigation costs reasonably incurred pursuant to 15 U.S.C. § 6851(b)(3)(A)(i).

## PUNITIVE DAMAGES UNDER FEDERAL LAW
(John N. Doe, N. Doe, and T. Doe Against R. Doe)

263.    Plaintiffs, by this reference, incorporate the contents and allegations of the preceding paragraphs of this complaint as if fully set forth here.

264.    Upon information and belief, R. Doe's publication of the audiovisual recordings and T. Doe Photograph to Motherless.com was accompanied by ill will, spite, or for the purposes of injuring Plaintiffs because R. Doe had been abusive to N. Doe during their marriage, N. Doe was successful in relocating their minor children to Yavapai County,

the Family Court altered R. Doe's parenting time because of N. Doe's efforts, and N. Doe and John N. Doe publicly announced their engagement that same month (*i.e.*, June 2022), and R. Doe was extremely angry with N. Doe and John N. Doe as a consequence.

265.   R. Doe's publication of the audiovisual recordings and T. Doe Photograph on Motherless.com reflected a complete indifference to the Plaintiffs' safety and rights.

266.   Plaintiffs are therefore entitled to punitive damages from R. Doe.

**ARIZONA TORT CLAIMS**

**<u>COUNTS 13-15</u>**
**NEGLIGENCE *PER SE***
(John N. Doe, N. Doe, and T. Doe Against R. Doe)

267.   Plaintiffs, by this reference, incorporate the contents and allegations of the preceding paragraphs of this complaint as if fully set forth here.

268.   "Under Arizona law, a plaintiff must prove four elements to sustain a claim for negligence: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Sanders v. Alger*, 242 Ariz. 246, 248, ¶ 7 (2017) (Internal citations and quotations omitted).

269.   "Some statutes create a duty or impose a standard of conduct; breach of the statute is equated with negligence. Arizona has long recognized that violation of such statutes is negligence per se." *Del E. Wenn Corp. v. Superior Court of Arizona Maricopa County*, 151 Ariz. 164, 167 (1986) (Internal citations and quotations omitted).

270.   A.R.S. § 13-1425(A) proscribes revenge pornography, *i.e.*, the certain or specific act of intentionally disclosing a person's image in the nude or engaging in specific

sexual activities where such person has a reasonable expectation of privacy and the image is disclosed with the intent to harm, harass, intimidate, threaten, or coerce the person. In addition, the statute protects a class of persons (those whose image has been created) from a specific form of harm (the disclosure of their image without consent).

271.   Pursuant to A.R.S. § 13-1425(A):

[i]t is unlawful for a person to intentionally disclose an image of another person who is identifiable from the image itself or from information displayed in connection with the image if all of the following apply:

1. The person in the image is depicted in a state of nudity or is engaged in specific sexual activities.

2. The depicted person has a reasonable expectation of privacy. Evidence that a person has sent an image to another person using an electronic device does not, on its own, remove the person's reasonable expectation of privacy for that image.

3. The image is disclosed with the intent to harm, harass, intimidate, threaten, or coerce the person.

272.   "Disclose" means display, distribute, publish, advertise, or offer. A.R.S. § 13-1425(D)(1).

273.   "Harm" means physical injury, financial injury, or serious emotional distress. A.R.S. § 13-1425(D)(3).

274.   "Image" means a photograph, videotape, film, or digital recording. A.R.S. § 13-1425(D)(4).

275.   "Reasonable expectation of privacy" means the person exhibits an actual expectation of privacy and the expectation is reasonable. A.R.S. § 13-1425(D)(5).

276.   "Specific sexual activities" means human genitals in a state of sexual stimulation or arousal and/or sex acts, normal or perverted, actual or simulated, including acts of human masturbation, sexual intercourse, oral copulation, or sodomy. A.R.S. §§ 13-1425(D)(6) and 11-811(E)(18)(a)-(b).

277.   "State of nudity" means the appearance of a human anus, genitals, or a female breast below a point immediately above the top of the areola. A.R.S. §§ 13-1425(D)(7) and 11-811(E)(14)(a).

278.   Upon information and belief, on July 23, 2022 and August 10, 2022, R. Doe published a total of ten different digital recording images (the JD Recordings and R. Doe Recordings) and one T. Doe Photograph depicting Plaintiffs in a state of nudity and/or engaging in specific sexual activities, including without limitation Plaintiffs' genitals, T. Doe's and N. Doe's breasts, Plaintiffs having sexual intercourse and performing oral copulation, and Plaintiffs in a state of sexual stimulation or arousal (*e.g.*, John N. Doe's erect penis).

279.   Plaintiffs are readily identifiable in the ten different digital recording images and one T. Doe Photograph, including for example because their faces are depicted, John N. Doe's tattoos are visible, and the videos were given personally identifiable titles of "f**k the cops! [city of residence] az police officer + wife" (referring to John N. Doe's occupation, city of residence, and relationship with T. Doe).

280.   In fact, two separate third parties immediately recognized Plaintiffs as depicted in the photographs and/or digital recording images.

281.   Upon information and belief, R. Doe made the R. Doe Recordings and JD Recordings publicly accessible from July 23, 2022, and August 10, 2022 (respectively), until April 27, 2023.

282.   Upon information and belief, R. Doe made the one T. Doe Photograph publicly accessible until April 27, 2023.

283.   Each of the ten different digital recordings had been viewed at least 100 times by February 7, 2023 (the date upon which Plaintiffs first saw the videos on Motherless.com).

284.   Upon information and belief, the T. Doe Photograph had been viewed at least 100 times by February 13, 2023.

285.   Plaintiffs had a reasonable expectation of privacy and did not provide R. Doe affirmative, conscious, and voluntary consent to disclose, publish, or make the ten different digital recordings and one T. Doe Photograph accessible on Motherless.com because Plaintiffs and R. Doe had expressly agreed that the ten different digital recordings should never be disclosed to persons other than Plaintiffs and R. Doe.

286.   The ten different digital recordings and one T. Doe Photograph were not commercial pornographic content.

287.   R. Doe's disclosures were not made in good faith to law enforcement; or as part of legal proceedings; or as part of medical education, diagnosis, or treatment; or in the reporting or investigation of unlawful content or unsolicited or unwelcome content.

288.   Plaintiffs' images were not a matter of public concern or public interest, nor did any of the conduct occur in a public or commercial setting.

289.   None of the conduct or parties at issue attempts to hold any interactive computer service or information service liable for R. Doe's conduct.

290.   Upon information and belief, R. Doe intended to cause Plaintiffs harm, including without limitation severe emotional distress in retaliation for N. Doe's successful efforts to relocate their minor children to Yavapai County, the Family Court's alteration of R. Doe's parenting time because of N. Doe's efforts, and N. Doe's and John N. Doe's subsequent public engagement that same month (*i.e.*, June 2022).

291.   R. Doe's publication of the ten digital recordings and one T. Doe Photograph to Motherless.com is the proximate cause of Plaintiffs' severe emotional distress, and Plaintiffs have suffered actual damages because of R. Doe's conduct.

292.   Plaintiffs seek actual and punitive damages in an amount to be determined by this Court.

## COUNTS 16-18
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(John N. Doe, N. Doe, and T. Doe Against R. Doe)

293.   Plaintiffs, by this reference, incorporate the contents and allegations of the preceding paragraphs of this complaint as if fully set forth here.

294.   R. Doe knew that the audiovisual recordings were to be kept private pursuant to the Plaintiffs' and R. Doe's Agreement at the time of the audiovisual recordings' creation, R. Doe knew that Plaintiffs wanted to protect their privacy due to their jobs, where they lived, and the best interests of their minor children, <u>and</u> none of the Plaintiffs consented to R. Doe's public disclosure of the audiovisual recordings.

295. R. Doe's public disclosure of the audiovisual recordings and one T. Doe Photograph on Motherless.com where each audiovisual recording had been viewed at least 100 times each by February 7, 2023, was extreme and outrageous because:

    a. an average member of the community would regard revenge pornography as atrocious, intolerable in a civilized community, and beyond all possible bounds of decency.

    b. Congress has adopted a public policy against acts of revenge pornography by enacting Section 1309 of the Violence Against Women Reauthorization Act of 2022; and

    c. Arizona's legislature has adopted a public policy against acts of revenge pornography by enacting A.R.S. § 13-1425 such that publicly disclosing images of Plaintiffs in the nude and engaged in sexual activities is a felony in the State of Arizona.

296. Upon information and belief, R. Doe's public disclosure of the audiovisual recordings and one T. Doe Photograph on Motherless.com was intentional because of N. Doe's successful efforts to relocate their minor children to Yavapai County, the Family Court's alteration of R. Doe's parenting time because of N. Doe's efforts, and N. Doe's and John N. Doe's subsequent public engagement that same month (*i.e.*, June 2022).

297. R. Doe's public disclosure of the audiovisual recordings and one T. Doe Photograph on Motherless.com was reckless because R. Doe was aware of and disregarded the near certainty that such public disclosure would cause the Plaintiffs' extreme emotional distress.



298.    R. Doe's public disclosure of the audiovisual recordings and one T. Doe Photograph on Motherless.com caused Plaintiffs to suffer severe emotional distress, including without limitation depression, anxiety, and physical symptoms of the same (*e.g.*, nightmares, loss of hair, teeth grinding, panic attacks, and nausea).

299.    Plaintiffs seek actual and punitive damages in an amount to be determined by this Court.

**COUNTS 19-21**
**PUBLIC DISCLOSURE OF PRIVATE FACTS**
(John N. Doe, N. Doe, and T. Doe Against R. Doe)

300.    Plaintiffs, by this reference, incorporate the contents and allegations of the preceding paragraphs of this complaint as if fully set forth here.

301.    Upon information and belief, on July 23, 2022 and August 10, 2022, R. Doe published a total of ten different audiovisual recordings (the JD Recordings and R. Doe Recordings) and one T. Doe Photograph depicting Plaintiffs in a state of nudity and/or engaging in specific sexual activities, including without limitation Plaintiffs' genitals, T. Doe's and N. Doe's breasts, Plaintiffs having sexual intercourse and performing oral copulation, and Plaintiffs in a state of sexual stimulation or arousal (*e.g.*, John N. Doe's erect penis).

302.    R. Doe's public disclosure of the audiovisual recordings and one T. Doe Photograph on Motherless.com where each audiovisual recording had been viewed at least 100 times each by February 7, 2023, would be highly offensive to a reasonable person, Congress has adopted a public policy against acts of revenge pornography by enacting Section 1309 of the Violence Against Women Reauthorization Act of 2022, <u>and</u> Arizona's

legislature has adopted a public policy against acts of revenge pornography be enacting A.R.S. § 13-1425 such that publicly disclosing images of Plaintiffs in the nude and engaged in sexual activities is a felony in the State of Arizona.

303.    At the time R. Doe disclosed the audiovisual recordings and one T. Doe Photograph, R. Doe knew or had reason to believe the audiovisual recordings were private because R. Doe knew that the audiovisual recordings were to be kept private pursuant to the Plaintiffs' and R. Doe's Agreement at the time of the audiovisual recordings' creation, R. Doe knew that Plaintiffs wanted to protect their privacy due to their jobs, where they lived, and the best interests of their minor children, and none of the Plaintiffs consented to R. Doe's public disclosure of the audiovisual recordings or T. Doe Photograph.

304.    The public disclosure of the ten audiovisual recordings and one T. Doe Photograph on Motherless.com was a cause of Plaintiffs' injuries, including without limitation severe emotional distress, and damages.

305.    Plaintiffs suffered injuries and damages because of the public disclosure of the ten audiovisual recordings and one T. Doe Photograph on Motherless.com.

306.    Plaintiffs seek actual and punitive damages in an amount to be determined by this Court.

**COUNT 22**
**NEGLIGENT SUPERVISION**
(John N. Doe, N. Doe, and T. Doe Against BVFD and AFMA)

307.    Plaintiffs, by this reference, incorporate the contents and allegations of the preceding paragraphs of this complaint as if fully set forth here.

308.    On July 23, 2022, and August 10, 2022, a total of ten different audiovisual recordings (the JD Recordings and R. Doe Recordings) depicting Plaintiffs in a state of nudity and/or engaging in specific sexual activities, including without limitation Plaintiffs' genitals, T. Doe's and N. Doe's breasts, Plaintiffs having sexual intercourse and performing oral copulation, and Plaintiffs in a state of sexual stimulation or arousal (*e.g.*, John N. Doe's erect penis) were published and made accessible on Motherless.com.

309.    Upon information and belief, R. Doe published the one T. Doe Photograph on either July 23, 2022, or August 10, 2022.

310.    Upon information and belief, R. Doe published and made the ten audiovisual recordings and one T. Doe Photograph accessible on Motherless.com.

311.    R. Doe was on duty on July 23, 2022, and August 10, 2022.

312.    Upon information and belief, R. Doe was on AFMA or BVFD's premises when he uploaded the ten audiovisual recordings and one T. Doe Photograph to Motherless.com, R. Doe used AFMA or BVFD's WiFi to upload the audiovisual recordings to Motherless.com, and/or R. Doe used AFMA or BVFD computers or equipment to upload the audiovisual recordings to Motherless.com.

313.    Upon information and belief, R. Doe informed other individuals in his profession or department of the audiovisual recordings' and one T. Doe Photograph's publication because both X.X. and Y.Y., the two individuals who reported the audiovisual recordings' existence on Motherless.com to T. Doe and John N. Doe, are firefighters in Arizona.

314.    Upon information and belief, BVFD and AFMA have policies against employees accessing pornographic websites while on duty, but do not provide employees training on its policies prohibiting employees from accessing pornographic websites while on duty, do not "block" WiFi users from accessing pornographic websites, like Motherless.com, and do not have any mechanisms in place to monitor employees' Internet use while on duty.

315.    AFMA and BVFD owe a duty to the public to ensure that their employees do not utilize their property or Internet to commit unlawful behavior that harms members of the general public.

316.    AFMA and BVFD owe a duty to the public to ensure that their employees do not commit unlawful behavior that harms members of the public while on duty.

317.    AFMA and BVFD breached their duties by allowing R. Doe to utilize their property to upload the R. Doe Recordings and JD Recordings or to do so while on duty.

318.    Upon information and belief, AFMA and BVFD knew that R. Doe has a propensity for engaging in such conduct, including without limitation distributing third party's intimate visual depictions to other firefighters without the third party's consent, and visiting pornographic websites while on duty.

319.    Upon information and belief, BVFD and AFMA could have implemented software to monitor employees' Internet use while on duty which would have enabled them to discover R. Doe's conduct on July 23, 2022, thereby preventing R. Doe from publishing additional audiovisual recordings to Motherless.com on August 10, 2022, and causing further harm to Plaintiffs.

42

320.    Upon information and belief, BVFD and AFMA knew or reasonably should have known through the exercise of ordinary care about R. Doe's conduct while on duty, including his use of BVFD and AFMA time and resources, to upload the audiovisual recordings to Motherless.com.

321.    BVFD's and AFMA's failure to exercise reasonable supervision over R. Doe's conduct on July 23, 2022, was the proximate cause of Plaintiffs' severe emotional distress because BVFD and AFMA could have discovered R. Doe's conduct at that time and prevented R. Doe from uploading additional audiovisual recordings of Plaintiffs on August 10, 2022.

322.    Plaintiffs have suffered actual damages because of BVFD's and AFMA's conduct.

323.    Plaintiffs seek actual and punitive damages in an amount to be determined by this Court.

**PUNITIVE DAMAGES UNDER STATE LAW**
(John N. Doe, N. Doe, and T. Doe Against R. Doe)

324.    Plaintiffs, by this reference, incorporate the contents and allegations of the preceding paragraphs of this complaint as if fully set forth here.

325.    Upon information and belief, R. Doe intended to cause Plaintiffs harm, including without limitation severe emotional distress in retaliation for N. Doe's successful efforts to relocate their minor children to Yavapai County, the Family Court's alteration of R. Doe's parenting time because of N. Doe's efforts, and N. Doe's and John N. Doe's subsequent public engagement that same month (*i.e.*, June 2022).

326.   Upon information and belief, R. Doe's publication of the audiovisual recordings and T. Doe Photograph was motivated by spite or ill will, because R. Doe had been abusive to N. Doe during their marriage, N. Doe was successful in relocating their minor children to Yavapai County, the Family Court altered R. Doe's parenting time because of N. Doe's efforts, and N. Doe and John N. Doe publicly announced their engagement that same month (*i.e.*, June 2022), and R. Doe was extremely unhappy with N. Doe and John N. Doe as a consequence.

327.   R. Doe's publication of the audiovisual recordings and T. Doe Photograph on Motherless.com was outrageous, oppressive, or intolerable <u>and</u> R. Doe knew or intentionally disregarded that his conduct created a substantial risk of significant harm to Plaintiffs.

328.   Plaintiffs are therefore entitled to punitive damages from R. Doe.

## REQUEST FOR INJUNCTIVE RELIEF

329.   Plaintiffs, by this reference, incorporate the contents and allegations of the preceding paragraphs of this complaint as if fully set forth here.

330.   Plaintiffs seek a temporary restraining order, preliminary injunction, and a permanent injunction ordering R. Doe to cease any further display or disclosure of Plaintiffs' intimate visual depictions pursuant to 15 U.S.C. § 6851(b)(1)(B).

331.   In view of R. Doe's pattern and practice of retaliating against Plaintiffs each time they attempt to address R. Doe's conduct, Plaintiffs assert that immediate and irreparable injury, loss, or damage may occur to Plaintiffs' persons and reputations before R. Doe can be heard in opposition. Specifically, nothing presently prevents R. Doe from issuing further disclosures of Plaintiffs' intimate visual depictions.

332.    Plaintiffs also seek a preliminary injunction and a permanent injunction pursuant to 15 U.S.C. § 6851(b)(3)(B), which permits the Court to grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym.

WHEREFORE, Plaintiffs seek entry of a judgment against Defendants R. DOE, BVFD, and AFMA for the monetary and other relief listed below:

1.    Statutory liquidated damages in the aggregate amount of $3,300,000 pursuant to 15 U.S.C. § 6851(b)(3)(A)(i) for the unauthorized disclosure of each of the ten audiovisual recordings containing John N. Doe's and T. Doe's intimate visual depictions and two audiovisual recordings containing N. Doe's intimate visual depictions;

2.    Compensatory damages in an amount to be determined by this Court for all Arizona law claims;

3.    Punitive damages in an amount to be determined by this Court for all federal law claims;

4.    Punitive damages in an amount to be determined by this Court for all Arizona law claims;

5.    Reasonable attorney's fees pursuant to 15 U.S.C. § 6851(b)(3)(A)(i);

6.    Court costs pursuant to 15 U.S.C. § 6851(b)(3)(A)(i);

7.    All reasonable costs of litigation pursuant to 15 U.S.C. § 6851(b)(3)(A)(i);

8.    Post judgment interest; and

9.    Any and all other such legal and equitable relief as the Court deems proper.

FURTHERMORE, Plaintiff prays for a temporary restraining order, preliminary injunction, and a permanent injunction that will order R. Doe (1) to refrain from further

disclosing Plaintiffs' intimate visual depictions and (2) to refrain from disclosing Plaintiffs' true identities to any other person.

RESPECTFULLY SUBMITTED this 6th day of February, 2024.

**RYAN RAPP PACHECO SORENSEN, PLC**

By: _____
Lesli M.H. Sorensen, Esq.
*Attorneys for Plaintiffs*

46

28 U.S.C. § 1746 UNSWORN VERIFICATION OF JOHN N. DOE

JOHN N. DOE verifies and says that I am the plaintiff and have authorized the filing of this complaint. I have reviewed the allegations made in the complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on information provided to me by plaintiffs Jane N. Doe and Jane T. Doe, information provided to me by law enforcement, information provided to me by X.X., and information listed on the website Motherless.Com, and I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on February ___6___, 2024.

JOHN N. DOE
JOHN N. DOE, PLAINTIFF

47

28 U.S.C. § 1746 UNSWORN VERIFICATION OF JANE N. DOE

JANE N. DOE verifies and says that I am the plaintiff and have authorized the filing of this complaint. I have reviewed the allegations made in the complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on information provided to me by plaintiffs John N. Doe and Jane T. Doe, information provided to me by law enforcement, and information listed on the website Motherless.Com, and I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on February _____, 2024.

_____
JANE N. DOE, PLAINTIFF

48

1

## 28 U.S.C. § 1746 UNSWORN VERIFICATION OF JANE T. DOE

2

3   JANE T. DOE verifies and says that I am the plaintiff and have authorized the filing
of this complaint. I have reviewed the allegations made in the complaint, and to those
allegations of which I have personal knowledge, I believe them to be true. As to those
4   allegations of which I do not have personal knowledge, I rely on information provided to me
by plaintiffs John N. Doe and Jane N. Doe, information provided to me by law enforcement,
5   information provided to me by X.X., and information listed on the website Motherless.Com,
and I believe them to be true.

6

7   I verify under penalty of perjury that the foregoing is true and correct.

Executed on February ___ℓ___, 2024.
8
                                          _Jane T. Doe_____
9                                          JANE T. DOE, PLAINTIFF

10

11

12

13

14

15

16

17

18

19

20

21

22