**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John N Doe, et al., | No. CV-24-00252-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Unknown Party, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' *ex parte* motion for a temporary restraining order ("TRO"), which asks the Court to enjoin Defendant John R. Doe from disclosing Plaintiffs' intimate visual depictions (Doc. 2), and Plaintiffs' motion to proceed under pseudonyms and for a protective order (Doc. 3). For the following reasons, Plaintiffs' motions for a TRO, to proceed under pseudonyms, and for a protective order are granted.

**I.    Background**[1]

This case involves allegations of "revenge porn." Plaintiffs John N. Doe and Jane T. Doe married each other in 2005, and John R. and Plaintiff Jane N. Doe married each other in 2006. In 2017, John N. and Jane T. (as a couple) and John R. and Jane N. (as a couple) decided to open their relationships, so both couples joined an online website where they could meet other couples and engage in intimate activities. The couples subsequently met one another and agreed to engage in such activities. The couples explicitly and verbally

---

[1] The following section draws from allegations made in Plaintiffs' Verified Complaint. (Doc. 1.)

agreed that all information, including audiovisual recordings, pertaining to their lifestyle could not be shared with third parties. From late 2017 through early 2018, the couples consensually created together ten audiovisual recordings depicting John N., Jane T., and Jane N. (collectively, "Plaintiffs") engaging in intimate and sexual acts. The recordings included Plaintiffs' faces, naked bodies including genitals, and distinctive tattoos.

By mid-2018, Plaintiffs and John R. mutually agreed to cease their relationship. Subsequently, John N. and Jane T. divorced, and Jane N. and John R. divorced. However, John N. and Jane N. continued seeing each other. In 2022, Jane N. sought a change in residency order from family court, permitting her to move her two minor children (whose father is John R.) to live with her and John N. in Yavapai County. John R. objected. However, the court granted the change in residency and altered John R.'s parenting time. The matter was officially closed on June 14, 2022. During this time, John N. publicly proposed to Jane N. (John R.'s now ex-wife).

Plaintiffs allege that on July 23, 2022, and August 10, 2022, John R. violated his oral agreement with Plaintiffs and published all ten audiovisual records to a pornographic website, Motherless.com. All ten recordings were made accessible to the public from their dates of publication through April 27, 2023, when they were taken down. Plaintiffs allege that John R. was angered by the family court's ruling and by John N. and Jane N.'s public engagement, so he uploaded these videos as retaliation. Plaintiffs also allege that in 2022, none of the Plaintiffs possessed the recordings and that they never disclosed the recordings to anyone other than John R. Plaintiffs assert that John R. is the only person who would have been in possession of the recordings and that John R. even informed others in his profession (as a firefighter) of the recordings' existence.

A friend informed Plaintiffs of the recordings' publication on February 7, 2023. As of that date, each of the recordings had been viewed at least 100 times. Plaintiffs immediately filed a complaint with law enforcement, who began investigating. On April 27, 2023, a detective assigned to Plaintiffs' case informed John R. that she wished to speak to him, which John R. refused. Later that day, Jane T. checked Motherless.com and

1 confirmed that the recordings had been removed. Plaintiffs allege that, after filing a Notice
2 of Claim with John R.'s place of employment, John R. began retaliating against Plaintiffs
3 through other means, including unilaterally changing his parenting time schedule and
4 calling the police on his ex-wife, Jane N. On February 6, 2024, Plaintiffs filed their Verified
5 Complaint (Doc. 1) against John R. alleging claims under federal and state law based on
6 John R.'s alleged unauthorized publication of the audiovisual recordings.

**II.     The TRO**

A TRO preserves the status quo pending a hearing on a preliminary injunction motion to avoid irreparable harm in the interim. The standards for granting a TRO are identical to those for granting a preliminary injunction. *Whitman v. Hawaiian Tug & Barge Corp./ Young Bros., Ltd. Salaried Pension Plan*, 27 F. Supp. 2d 1225, 1228 (D. Haw. 1998). A plaintiff must establish: (1) likelihood of success on the merits of the claims; (2) likelihood of irreparable harm in the absence of immediate relief; (3) the balance of equities tips in the plaintiff's favor; and (4) a TRO is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A court examines these elements along a sliding scale, meaning that a stronger showing of one element may offset a weaker showing of another, although all elements must still be met. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

**A. Success on the Merits**

Plaintiffs bring claims under 15 U.S.C. § 6851, which provides that,

> an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief.

15 U.S.C. § 6851(b)(1)(A). Individuals who file claims under this statute may recover damages in addition to equitable relief. *Id.* § 6851(b)(4). An "intimate visual depiction" includes any photo, video, or other visual image that depicts (1) uncovered genitals, pubic

- 3 -

area, post-pubescent female nipple of an identifiable individual or (2) an identifiable individual engaging in sexually explicit conduct. *Id.* § 6851(a). "The term 'disclose' means to transfer, publish, distribute, or make accessible." *Id.* § 6851(a)(4).

The Court finds that Plaintiffs are likely to succeed on the merits of their claims under 15 U.S.C. § 6851(b)(1)(A).[2] The Verified Complaint supports that John R. used the internet to disclose[3] intimate visual depictions of Plaintiffs without their consent. *See Vill. Tavern, Inc. v. Catbird Hosp., LLC*, No. 1:21-CV-00228-MR, 2022 WL 3440637, at *3 (W.D.N.C. Aug. 16, 2022) (finding that "use occurred 'in commerce' because the Defendants displayed the mark on the internet, a channel of interstate commerce"). Specifically, the Verified Complaint supports that John R. was the only person who possessed the ten audiovisual recordings in 2022 and that he might have been retaliating against John N. and Jane N. for their proposal and for the family court ruling, both of which coincided with John R.'s alleged initial publication date of July 2022. Further, the recordings were taken down from the internet on April 23, 2023, the same day that a detective allegedly spoke with John R. regarding the recordings. This is sufficient circumstantial evidence to establish a likelihood of success on the merits. *See Doe v. Sultan*, No. 3:23-CV-00667-FDW-DCK, 2023 WL 7027976, at *2 (W.D.N.C. Oct. 25, 2023) (granting a preliminary injunction where "evidence tends to show Defendant was the only

---

[2] Plaintiffs also bring state law claims for negligence *per se*, intentional infliction of emotional distress, and public disclosure of private facts. (Doc. 1) The Court need not reach Plaintiffs' likelihood of success on the merits of these claims because the claims brought under 15 U.S.C. § 6851 are sufficient to sustain the TRO. *See Shawarma Stackz LLC v. Jwad*, N0. 21-CV-01263-BAS-BGS, 2021 WL 5827066, at *19 (S.D. Cal. Dec. 8, 2021) ("The Court need not reach the merits of the remaining state torts claims that SSL raises because the Lanham Act claim and the UCL claim are sufficient to sustain a preliminary injunction.").

[3] Plaintiffs allege that John R. initially published the ten recordings on the internet on July 23, 2022, and August 10, 2022, which is prior to 15 U.S.C. § 6851's effective date of October 1, 2022. Plaintiffs also assert, though, that the recordings continued to be made accessible on the internet until April 27, 2023. Given the statute under which Plaintiffs seek relief was only recently enacted, there is little caselaw on whether the statute can be applied retroactively to disclosures made prior to October 1, 2022. That said, Plaintiffs have a colorable argument that John R. continued to "disclose" the recordings after the statute's effective date because he allegedly continued to make these videos accessible on the internet until April 2023. Moreover, even if Plaintiffs can only show a serious question going to the merits of their claims (instead of a likelihood of success), the Court would nonetheless grant the TRO given that, as discussed below, the equities sharply tip in Plaintiffs' favor.

person who possessed the intimate video posted on Facebook and emailed to her employer, and that only Plaintiff and Defendant possessed the intimate image sent to Plaintiff's employer").

### B. Likelihood of Irreparable Harm

Plaintiffs have demonstrated that, absent emergency relief, there is an imminent risk of John R.'s further nonconsensual disclosure of Plaintiffs' intimate visual depictions. The harms Plaintiffs allege from these disclosures—such as emotional distress—are the type of harms that lack an adequate legal remedy. Moreover, because the Verified Complaint supports that John R. has a pattern and practice of retaliating against Plaintiffs, there is a substantial risk that John R. will retaliate against Plaintiffs by making further disclosures once he is served and put on notice of this case.

### C. Balance of Equities

The Court finds that the balance of equities strongly weighs in favor of Plaintiffs and against John R.. *See Sultan*, 2023 WL 7027976, at *2 (holding same). The relief Plaintiffs seek is narrowly tailored to enjoin John R. from disclosing these recordings. John R. has no economic interest in publishing such depictions, and any additional disclosure serves no justifiable or lawful purpose.

### D. Public Interest

There is no harm to public interest if the TRO is granted. The requested relief only targets John R. and therefore has no impact on non-parties. What's more, in enacting 15 U.S.C. § 6851(b)(1)(A), Congress expressed a public policy against revenge porn. A TRO that orders John R. not to engage in such activity advances, rather than harms, that public interest.

## III. Issuing a TRO *Ex Parte*

A party seeking an *ex parte* TRO must comply with Federal Rule of Civil Procedure 65(b)(1) by (1) substantiating allegations of irreparable harm with an affidavit or verified complaint and (2) certifying in writing any efforts made to give notice to the non-moving parties, and why notice should not be required. Generally, a court may only issue a TRO if

the movant "gives security in an amount the court considers proper to pay the costs and damages sustained by any party wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, a court may waive the bond "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Barahona-Gomez v. Renno*, 167 F.3d. 1128, 1237 (9th Cir. 1999).

Plaintiffs substantiated their allegations of irreparable harm by providing a Verified Complaint. (Doc. 1.) Plaintiffs argue that if they were required to give notice, John R., upon receiving notice, would likely retaliate against Plaintiffs and further disclose the audiovisual recordings and/or any other intimate visual depictions of Plaintiffs. The Court agrees that notice should not be required in this instance. As for the bond, the Court finds there is little realistic likelihood of harm to John R. from enjoining his conduct, and thus no bond is necessary.

## IV.     Request to Proceed under Pseudonyms

In addition to their request for emergency relief, Plaintiffs seek to proceed under the pseudonyms John N. Doe, Jane N. Doe, Jane T. Doe and to proceed against Defendant under the pseudonym John R. Doe. (Doc. 3.) Plaintiffs also request entry of a protective order barring dissemination of Plaintiffs' and John R.'s true names and requiring that any documents containing their true names be redacted from pleadings or documents. (Doc. 3.)

The Court finds it appropriate to allow Plaintiffs and John R. to proceed under pseudonyms. For one, Plaintiffs seek relief under 15 U.S.C. § 6851, and that statute expressly provides that "the court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym." 15 U.S.C. § 6851(b)(3)(B); *see e.g.*, *Sultan*, 2023 WL 7027976, at *2 (allowing plaintiff to proceed under a pseudonym). Second, preserving anonymity in this case outweighs any prejudice to John R. and the public's interest in knowing the parties' identities. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) ("In this circuit, we allow parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule, or personal embarrassment."). This

case involves highly sensitive and intimate details of all parties involved. Requiring disclosure of Plaintiffs' names is neither material to the case nor prejudicial to John R.

Additionally, the Court is persuaded that requiring John R. to proceed under a pseudonym is necessary to preserve Plaintiffs' anonymity. Because Jane N. and John R. were previously married and because Jane N. and John N. are now currently married, the disclosure of John R.'s name would easily reveal all three Plaintiffs' identities. Accordingly, the Court grants Plaintiffs' motion (Doc. 3) to proceed under pseudonyms and for a protective order barring dissemination of Plaintiffs' and John R.'s true names.

**IT IS ORDERED** that Plaintiffs' *ex parte* motion for a TRO (Doc. 2) is **GRANTED** as follows:

1) Defendant John R. Doe and all persons in active concert or participants with him are enjoined from disclosing intimate visual depictions of Plaintiffs.

2) Defendant John R. Doe and all persons in active concert or participants with him are enjoined from disclosing Plaintiffs' identities to anyone else.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for a TRO (Doc. 2) is converted into a motion for a preliminary injunction. Plaintiffs shall serve Defendant John R. Doe with the Verified Complaint, the preliminary injunction motion, and this order by no later than **February 14, 2024** and file proof thereof with the Court. Defendant John R. Doe's response to the preliminary injunction motion is due no later than **February 28, 2024**. Plaintiffs may file an optional reply by no later than **March 6, 2024**. The parties shall appear for a preliminary injunction hearing before Judge Douglas L. Rayes in Courtroom 606, 401 W. Washington St., Phoenix, AZ 85003 on **March 12, 2024, at 1:30 PM**. By no later than **March 6, 2024**, the parties shall jointly notify the Court in writing whether this hearing will be an evidentiary hearing or an oral argument on the paper record only. If the hearing will consist of oral argument only, the Court will conduct the hearing telephonically and provide the parties with call-in information prior to the hearing date.

**IT IS FURTHER ORDERED** that, to afford the parties adequate time to brief the issues and the Court to hold a hearing, the Court finds good cause to extend the duration

of this TRO beyond the ordinary fourteen days. Unless otherwise extended, this TRO will expire on **March 14, 2024**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to proceed under pseudonyms and for a protective order (Doc. 3) is **GRANTED** as follows:

1) In all publicly filed documents, Plaintiffs and Defendant John R. Doe shall be identified only by their pseudonym.

2) All documents filed with the Court that contain a Plaintiff's or Defendant John R. Doe's true name shall be filed under seal.

3) If requested to do so, Plaintiffs' counsel shall disclose the true name of each Plaintiff and the true name of Defendant John R. Doe to counsel for the defendants.

4) Counsel for the parties may disclose Plaintiffs' and Defendant John R. Doe's true identities to the named plaintiffs and defendants, their employees, and their experts retained in this case, but only to the minimum extent necessary to litigate this action.

5) Any person to whom disclosure is made because of this litigation shall first read this protective order prior to receiving Plaintiffs' and Defendant John R. Doe's true identities. Counsel for the parties shall ensure that all persons to whom disclosure is made pursuant to paragraphs 3 and 4 are aware of this protective order.

6) Under no circumstances shall any person disclose the Plaintiffs' or Defendant John R. Doe's true identities to the media without the consent of Plaintiffs' or Defendant John R. Doe's counsel or by court order.

7) If any issues related to non-disclosure of Plaintiffs' or Defendant John R. Doe's true identities arise during litigation, the parties shall seek to resolve those issues without court intervention. If the parties cannot agree, they shall seek further clarification from this Court.

Dated this 7th day of February, 2024.

Douglas L. Rayes
United States District Judge